Opinion adopted March 20, 1888.

---

No. 2324.

FIRST NATIONAL BANK OF HOUSTON v. CATHERINE ACKERMAN.

1. EQUITY—VENDOR AND VENDEE—SUBROGATION—LIEN.—A, desiring to acquire perfect title to a portion of a tract of land on which B held a lien for unpaid purchase money against C, received from B a release of his lien under an agreement with him for its execution on payment by A of the purchase money price to C. The money was paid, but was never credited by B on his purchase money demand against C, and was never applied to B's debt. In a suit by a judgment lien creditor of C, when judgment lien had attached to C's interest, if any, in the land, and to subject the land purchased by A to the satisfaction of the judgment, *held:*

(1) The superior title was never for an instant of time vested in C so as to subject the land to the lien of his judgment creditor.

(2) The object in contemplation by A, B and C being that A should acquire perfect title, equity will effectuate such intention, and regard that as having been done which should have been done.

(3) A was subrogated to the lien held by B, and though the amount paid by A was not in fact appropriated to the payment of B's lien notes, it must, in A's protection, be regarded as having been so paid.

(4) When money due on a mortgage is paid, it ordinarily operates as a discharge of the mortgage, or in the nature of an assignment of it, substituting him who pays in the place of the mortgagee, as may best serve the purposes of the parties.

ERROR from Grimes. Tried below before the Hon. Norman G. Kittrell.

*Goldthwaite & Ewing* and *O. A. Norwood*, for plaintiff in error: When a vendor reserves a lien for purchase money, the contract is executory, and the superior title remains in the vendor, but this is so only for the purpose of affording the vendor a remedy. The interest of the vendee is an interest to which a judgment lien will attach, and the vendor and vendee can not, in the absence of default, rescind the sale, to the prejudice of such lien holder; and where the vendor has released his lien, the sale is confirmed, the legal right is gone, and a purchaser from the original grantee can, under no circumstances in such case, claim substitution to any previously existing right of the vendor, except in virtue of the equity of subrogation, and under the limitations to which that doctrine is subject. (Mooring & Lyon v. McBride, 62 Texas, 309; Tom v. Wollhoefer, 61 Texas, 279.)

*Boone & Cobbs*, for defendant in error: The superior legal title to the land in controversy was in John H. Owen. Under the transaction between Owen, Thomas and defendant Ackerman, Owen's superior legal title was transferred to and vested in Mrs. Ackerman.

Or, by reason of the transaction between Owen, Thomas and Ackerman, Mrs. Ackerman was subrogated to the rights of Owen to the extent of the sum paid by her, or there arose to that extent a substituted equity in her favor. (Jamison v. Halbert, 47 Texas, 181.)

A judgment being merely a general lien on the land of the debtor, is not favored by law, and is subject to every equity which existed against the land, and a court of chancery will protect the equitable rights of third persons against the legal liens, and will remit that lien to the actual interest which the debtor has in the estate. (Blankenship v. Douglass, 26 Texas,

225; Frazer v. Thatcher, 49 Texas, 26; 2 Story on Equity Jurisprudence, secs. 1227, 1230, 1231, 1233; Malone v. Bubs, 2 Vt., 84; Magee v. Magee, 51 Ill., 500; Johnson v. Sewell, 33 Ind., 1.)

MALTBIE, PRESIDING JUDGE.    The First National Bank of Houston, on the second of April, 1880, recovered a judgment against Hamp Thomas for three thousand one hundred and sixteen dollars and forty-two cents.    An execution issued within less than twelve months from the rendition of the judgment, and an abstract was duly recorded in the records of Grimes county on the nineteenth of July, 1882.    On the thirteenth of December, 1882, J. H. Owen sold and conveyed to Thomas a tract of land of three hundred and eighteen acres, situated in Grimes county for the sum of three thousand eight hundred and forty-eight dollars—evidenced by three notes, for one thousand two hundred and eighty-two dollars and sixty-six cents each, payable in one, two and three years, with ten per cent interest from date until paid, expressly reserving a lien in the deed to secure their payment.    Mrs. Catherine Ackerman, one of the defendants in error, desired to purchase fifty-six acres out of the three hundred and eighteen acre tract, but would not do so unless Owen would release his lien.    On the seventh day of June, 1884, Owen agreed with Mrs. Ackerman that, if she would pay to Thomas the sum of nine hundred and fifty dollars, the purchase price of the land, to be paid to him, Owen, that he would release his lien on the fifty-six acres.    In pursuance of this agreement, Mrs. Ackerman paid Thomas the nine hundred and fifty dollars for the land, who on the same day paid it to Owen; but Owen, under some arrangement with Thomas, allowed him to retain the money.    There was no agreement between Ackerman and Owen as to how the latter should apply the money paid to Thomas.    Owen, in consideration of nine hundred and fifty dollars, released all of his right, title and interest in the fifty-six acres sold by Thomas to Mrs. Ackerman by an instrument in writing; and Thomas, at the same time and on the same sheet of paper, in consideration of the same sum of money, conveyed the land to Catherine Ackerman.    Only one of the three notes given by Thomas for the purchase of the land was ever paid; nor was the nine hundred and fifty dollars that Owen allowed Thomas to retain ever paid.    Soon after the transfer of the land, Thomas died; and, on the

twenty-seventh of February, 1885, Fannie L. Thomas was appointed administratrix of his estate. Subsequently Owen made application to the county court of Grimes county for an order to sell the three hundred and eighteen acres of land, less the fifty-six acres sold to Mrs. Ackerman, for the purpose of paying the two notes executed by Thomas to secure the payment of the purchase money of the land. The order was granted, the land sold, bid in by Owen at two thousand dollars and the sale duly confirmed, Owen crediting his bid on the notes. The nine hundred and fifty dollars paid by Mrs. Ackerman was never credited on either note. On March 8, 1886, appellant presented to Fannie L. Thomas, for allowance, the judgment recovered by it against Hamp Thomas, and she, as administratrix of the estate of Thomas, on the same day rejected it. This suit was brought to establish the judgment against the estate of Thomas, and to foreclose its lien on the fifty-six acres purchased by Mrs. Ackerman. The district court established the claim as a just demand against the estate of Thomas; foreclosed its judgment lien, and ordered the land to be sold as under execution, but directed that the proceeds of the sale be first paid to Ackerman to the extent of nine hundred and fifty dollars, the amount paid Thomas for the land, and the balance, if any, to be paid on appellant's demand. The release executed by Owen is as follows:

THE STATE OF TEXAS, }
GRIMES COUNTY. }

Know all men by these presents, that I, John H. Owen, have this day, for and in consideration of the sum of nine hundred and fifty dollars, to me in hand paid or secured, by Hamp Thomas, have this day released all right, title or claim, by vendor's lien or otherwise, to the certain tract or parcel of land conveyed by Hamp Thomas this day to Mrs. Catherine Ackerman, by warranty deed herewith attached. (For further description of said tract of land reference is here made to said hereto attached deed.) This seventh day of June, A. D. 1884.

JOHN OWEN.

It will be observed that there is no grantee or releaser named in this instrument; but Owen knew, at the time of its execution, that Mrs. Ackerman had furnished the identical money that was paid to him, and that the intent and purpose on her part was to obtain a good title to the land; and all of the at-

tending facts and circumstances show that the intention of the parties was not that the superior title to the land should vest in Thomas, but that it should vest in Mrs. Ackerman, upon payment of the purchase money to Owen, who held the superior title to the land for the purpose of securing the payment of the notes executed by Thomas; and immediately upon the payment of the price of the fifty-six acres, the release from Owen and the deed from Thomas were delivered to Mrs. Ackerman. It was clearly the intention of all the parties that the transfer or release, by whatever name called, from Owen, should not take effect until the money was paid, and that it then should inure to the benefit of Mrs. Ackerman.

We are of opinion that under the facts of this case there never was an instant of time in which the superior title to the fifty-six acres was vested in Hamp Thomas, but that the release from Owen was in abeyance until the money was paid, when the right thereby conveyed vested in Mrs. Ackerman at once, in accordance with the intent of the parties. As before stated, the money paid by Mrs. Ackerman was never applied by Owen to the payment of either of the notes that Thomas had given for the land, nor did she make any agreement with Owen to that effect; but her intention in paying the money to Owen being to acquire title to the land, equity will consider that as having been done which ought to have been done, in regard to the application of the money, as a payment on the Thomas notes, and if to the advantage of Mrs. Ackerman as against Owen, the payment of the money will be regarded as having been made upon the notes. (1 Story's Equity Jurisprudence, sec. 649.)

Appellant's lien attached to such title as Thomas had in the land, and to such title only. (Jemison v. Halbert, 47 Texas, 181.) Thomas held the land subject to Owen's superior lien to secure the purchase money. If there had been no transfer of any part of the land, appellant could have had it sold under his judgment lien, subject to Owen's lien for the purchase money; and so it could, notwithstanding the sale to Mrs. Ackerman, have caused the entire three hundred and eighteen acres to be sold, subject to Owen's lien and to such lien as may have been assigned to Mrs. Ackerman, or to which she may have become subrogated by reason of her transaction with Thomas and Owen.

It is objected that Mrs. Ackerman can not be subrogated to the lien of Owen, because no security was assigned or paid off. It is true there was no actual application of the money paid by Mrs. Ackerman to the payment of the notes, but we think that the nine hundred and fifty dollars paid by her must be regarded as a payment on the notes, unless the application of such payment would prejudice the rights of appellants; and there is no allegation or proof that the fifty-six acres purchased by Mrs. Ackerman was of greater value than the price paid for it, and therefore, if applied to the payment of Owen's notes, his lien on the balance of the tract would be diminished to that extent and the sale could work no injury to appellant. In the civil law, subrogation is defined to be that change by which another person has been put into the place of a creditor, and which makes the rights of the creditor, and any securities that he holds, pass to the person who by being subrogated to him enters into his right. It is said to be a legal fiction by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies and securities of another.

The party who is subrogated is regarded as constituting one and the same person with the creditor whom he succeeds. These definitions have been generally adopted and followed by the courts. (Sheldon on Subrogation, 2, 3.) In accord with these liberal principles, the fairness and justice of which commend them to the enlightened sense of all correct thinking men, Judge Parker, in the case of Robinson v. Leverett, in the seventh New Hampshire Reports, pages 100, 101, makes the following lucid exposition of the doctrine of equitable assignment and the right of subrogation: "The true principle," said he, "is that when money due on a mortgage is paid it shall operate as a discharge of the mortgage, or in the nature of an assignment of it, substituting him who pays in the place of the mortgagee, as may best serve the purposes of justice and the just intent of the parties." (6 Johns. C. R., 395; Starr v. Ellis.)

Many cases state the rule in equity to be that the encumbrance shall be kept on foot or considered extinguished or merged according to the intent or the interest of the party paying the money; but the decisions, it is believed, will generally be found in accordance with the principles above stated. (6 Johns. C. R., 53, Gardner v. Astor; Id., 425, James v. John-

son & Morey; 2 Cowan, 246; 5 Johns. C. R., 41, Burnet v. Deniston; Id., 220, Mills v. Comstock; 3 Me., 260, Freeman v. Paul; 7 Me., 377, Thompson v. Chandler; 3 Vt., 561, Harvey v. Hurlburt; 5 Vt., 250, Marshall v. Wood; 6 Conn., 374, Lockwood v. Sturdevandt; 1 Veas., Sr., 258, Kirkham v. Smith; 1 Veas., Jr., 233, Shrewsbury v. Shrewsbury; Id., 264, Lord Compton v. Oxenden; 18 Veas., Jr., 384, Forbes v. Maffit; 3 Swanson, 186, Earl of Buckinghamshire v. Hobart.)

And it makes no difference, in either of these classes, whether the party, on the payment of the money, took an assignment of the mortgage as a release, or whether a discharge was made and the evidence of the debt canceled. (Snow v. Sterns, 15 Mass., 278; 2 Cowen, 164; 1 Vesey, Sr., 158; 4 Peck, 505; 6 Peck, 498.)

The debt itself may be held still to subsist in him who paid the money as assignee, so far as it ought to subsist, in the nature of a lien on the land, and the mortgage be considered in force for his benefit, so far as he ought, in justice, to hold the land under it, as if it had actually been assigned. (9 Cranch, 456-498; Pratt v. Lew.)

Justice has been effected between parties in this mode by overlooking the form of the transaction. The result of the authorities is stated to the same effect in Pomeroy's Equity Jurisprudence, volume 3, section 1211, and we think that Mrs. Ackerman, by reason of the transactions hereinbefore detailed, became substituted to all the rights of John H. Owen in the fifty-six acres of land purchased by her, and that appellant can not be heard to complain, unless it has sustained some injury on account of the purchase. Owen and Thomas combined could not make a transfer of the land to the prejudice of the bank after it acquired a judgment lien on the land. Appelant could have had the equities between Owen, Ackerman and itself adjusted, and could have asserted its rights to the same extent as if none of the land had been transferred. But this was not done, and if it had been would not have benefited appellant, the court having found that at the time of the trial the land was not worth exceeding eight dollars per acre, so the entire tract would not have sold for enough to pay off Owen's two notes. There being no error of which the appellant can complain, and the justice of the case having been attained, we are of opinion that the judgment should be affirmed.

Opinion adopted March 20, 1888.                    *Affirmed.*