Michael O. MURRAY and Whitney W. Murray, Appellants

v.

The CADLE COMPANY, Appellee.

No. 05–06–01481–CV.

Court of Appeals of Texas, Dallas.

April 25, 2008.

Rehearing Overruled June 24, 2008.

Randall K. Price, Stephen L. Tatum, Cantey & Hanger, L.L.P., Fort Worth, for Appellants.

Jeffrey Scott Lowenstein, Bell Nunnally & Martin, Dallas, for Appellee.

Before Justices RICHTER, FRANCIS, and LANG–MIERS.

## OPINION ON REHEARING

Opinion by Justice LANG–MIERS.

We deny appellants' motion for rehearing. We withdraw our opinion of March 6, 2008 and vacate our judgment of that date. This is now the opinion of the Court. This is an appeal from a lawsuit to declare the priority of liens and to foreclose a judgment lien. We affirm the trial court's judgment in part and reverse in part and remand for further proceedings.

### BACKGROUND

In November 1992, the Federal Deposit Insurance Corporation obtained a judgment in excess of $1 million against James H. Moore, III. The FDIC filed an abstract of that judgment in February 1993. Through a series of assignments, appellee The Cadle Company acquired the judgment in September 2001. Cadle issued a writ of execution on the judgment on June 6, 2002. It also filed a second abstract of judgment a week later, on June 13, 2002, and Cadle issued a second writ of execution on March 22, 2004. Both writs were returned *nulla bona.*

Meanwhile, in February 2002, the judgment debtor, Moore, purchased property in Dallas for $625,000 from his daughter and son-in-law. Moore borrowed $500,000 from Countrywide Home Loans to purchase the property and executed a deed of trust on the property in favor of Country-

wide. The evidence suggests that the remaining $125,000 purchase price was paid by Brunswick Homes, a real estate investment company owned in part and managed by Moore.[1] Several months later, Moore deeded the property to Brunswick Homes by special warranty deed and without consideration "because it was a Brunswick transaction."[2] Moore said he purchased the home in his name because he was able to personally obtain the loan through a no-documentation loan program and "it was easier that way." Moore continued to be the principal obligor on the Countrywide mortgage, and the deed of trust lien remained on the property.

At some point, Moore met David Baxter, an escrow agent and fee attorney with LandAmerica Commonwealth Title of Dallas. He told Baxter that he wanted to use Baxter to close transactions for Brunswick Homes. Sometime in October 2003, Moore called Baxter about the property involved in this case. Baxter did not recall the conversation, but said that his notes indicate Moore may have called him about the judgment lien and whether it would appear in a title report on the property. Baxter asked the title department to run a report. The judgment lien did not appear in the chain of title. Baxter testified it was not his job to "examine behind the Title Report" and "what [Moore] says and what my title department says—I rely on the title department."

A few months later, on April 26, 2004, appellants Michael O. Murray and his wife, Whitney W. Murray, purchased the property for $545,000. For some reason not reflected in the evidence, the Murrays thought they were purchasing the property from Moore, not Brunswick Homes. They purchased the property with primary and secondary purchase-money loans from two different lenders in the total amount of $429,650 and executed deeds of trust in favor of those lenders. The Murrays used the proceeds from those loans and $77,277.76 of their own money to pay off Moore's loan from Countrywide.

In March 2005, Cadle sued the Murrays for declaratory judgment and to foreclose on its judgment lien. The parties filed competing motions for summary judgment. Cadle argued that its judgment lien is superior to the purchase-money liens filed by the Murrays' lenders because it was filed prior in time. The Murrays argued that Cadle's judgment lien is invalid because the first abstract of judgment expired on February 2, 2003, and the second abstract of judgment was not properly recorded and indexed. They also contended that they and their lenders are subrogated to the Countrywide lien.[3] The trial court granted Cadle's motion on the ground that Cadle's judgment lien is valid and the superior lien against the property and ordered a sale of the property to satisfy the judgment lien. In three issues, the Murrays appeal the trial court's judgment granting Cadle's motion and denying their own. In a fourth issue, they argue that the trial court erred by allowing Cadle to supplement its summary judgment evi-

1. When Moore testified about this transaction, he stated, "I did not put any of these funds in ... Brunswick put those funds up." The evidence showed Moore owned 1% of Brunswick Homes and JHM Properties, a company owned by Moore's wife, owned 50%. The remaining 49% was owned by a company named EnMark Parent Corp. The record is silent about the ownership of EnMark.

2. Although Moore testified he deeded the property to Brunswick Homes subject to the Countrywide lien, the special warranty deed does not refer to that lien.

3. The Murrays' lenders are not and have never been parties in this lawsuit.

dence two months after the hearing on the motions without affording them an opportunity to present rebuttal evidence.

## DISCUSSION

### Standard of Review

■■■ When both parties move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000). If the trial court grants one motion and denies the other, the non-prevailing party may appeal the prevailing party's motion as well as its own motion. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex.1996). We review the summary judgment evidence presented by both parties and determine all questions presented. *Dallas Morning News*, 22 S.W.3d at 356.

### Validity of Cadle's Judgment Lien

■■■ In a subpart of their first and second issues, the Murrays argue that the trial court erred by denying their motion for summary judgment because Cadle's judgment lien is invalid as a matter of law. The parties do not dispute that the lien created by the recording and indexing of the first abstract of judgment expired before the Murrays purchased the property. However, the Murrays contend that the second abstract of judgment Cadle filed on June 13, 2002 did not create a valid lien on the property because that abstract was not properly issued, recorded, and indexed.[4] We cannot agree.

■■■ Under Texas law, a judgment creditor must comply with the statutory mechanisms providing for the creation of

judgment liens to acquire a lien on real property owned by the judgment debtor. TEX. PROP.CODE ANN. §§ 52.001 et seq. (Vernon 2007 & Supp.2007); *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex.App.-Dallas 1988, writ denied). Because a judgment lien is created by statute, substantial compliance with the statutory requirements is mandatory before a judgment creditor's lien will attach. *Citicorp Real Estate*, 747 S.W.2d at 929. The party seeking to foreclose a judgment lien has the burden of proving the abstract of judgment was properly recorded and indexed. *Allied First Nat'l Bank of Mesquite v. Jones*, 766 S.W.2d 800, 801 (Tex. App.-Dallas 1988, no writ).

■■■ An abstract of judgment recorded in accordance with the provisions of the property code, if the judgment is not dormant, "constitutes a lien on the real property of the defendant located in the county in which the abstract is recorded and indexed, including real property acquired after such recording and indexing." TEX. PROP.CODE ANN. § 52.001. The property code requires the county clerk to record properly authenticated abstracts of judgment in the county real property records and, at the same time, "enter the abstract on the alphabetical index to the real property records, showing: (1) the name of each plaintiff in the judgment; (2) the name of each defendant in the judgment; and (3) the volume and page or instrument number in the records in which the abstract is recorded." TEX. PROP.CODE ANN. § 52.004(a)-(b). The purpose of the index is to provide notice to subsequent purchasers of the existence of the judgment and to

---

4. The Murrays make additional arguments and cite other evidence attached to their motion for new trial. However, those arguments and evidence were not before the trial court when it ruled on the motions for summary judgment, and the Murrays do not appeal from the denial of their motion for new trial. We do not consider those arguments or evidence. *See* TEX.R. CIV. P. 166a(c).

indicate the source from which the full information about the judgment may be obtained. *Wilson v. Dvorak,* 228 S.W.3d 228, 234 (Tex.App.-San Antonio 2007, pet. denied); *Thompson v. Clay,* 367 S.W.2d 917, 920 (Tex.Civ.App.-Amarillo 1963, writ ref'd n.r.e.).

The Murrays initially contend that Cadle did not prove that the second abstract of judgment was properly issued on the certificate of the clerk of the federal court because it lacked the clerk's seal. However, Cadle submitted a copy of the second abstract of judgment to support its motion for summary judgment and that copy showed the seal of the clerk. We conclude that the summary judgment evidence shows the abstract of judgment was properly issued.

■ The Murrays next contend that Cadle did not prove the abstract of judgment was properly recorded and indexed.[5] To support its motion for summary judgment, Cadle offered the affidavit of Yolanda Craig, a deputy clerk of Dallas County for over forty years, who testified about how abstracts of judgment are recorded in Dallas County:

> Abstracts of Judgment are recorded in [the] Index to the Real Property Records of Dallas County, Texas, in the same manner as other documents affecting ownership of real property, and have been so recorded during my entire period of employment as a Deputy Clerk of Dallas County, Texas, in the Recording Division.

> The Index to Real Property Records is an alphabetical index. After they are filed, Abstracts of Judgment are recorded in the Index to the Real Property Records. The abstract on the alphabetical index to the real property records shows the name of each plaintiff in the judgment, the name of each defendant in the judgment, and the volume and page or instrument number in the records in which the abstract is recorded. The plaintiff is listed under the heading, "Grantor," and the defendant is listed under the heading, "Grantee."

Craig also testified specifically about Cadle's second abstract of judgment:

> The Abstract of Judgment was indexed in Volume 2002 115, Pages 00761–00763 of the Dallas County Real Property Records. This Abstract of Judgment is indexed alphabetically in the Dallas County Real Property Records in the name of the Plaintiff, FDIC, under the heading "Grantor" and in the name of the Defendant, James H. Moore, III under the heading "Grantee."

■ The Murrays argue that the property code requires the abstract of judgment to be indexed by plaintiff and defendant and that Craig's affidavit establishes as a matter of law that the abstract of judgment was not properly recorded and indexed because it was indexed by grantor and grantee. The Murrays do not cite any authority to support their argument that the property code requires *indexing* by plaintiff and defendant. It requires indexing by "the name of each plaintiff" and "the name of each defendant." But the language of the statute does not mandate, or prohibit, particular headings for the alphabetical index to the real property records. *See* Tex. Prop.Code Ann. § 52.004(b); *see Von Stein v. Trexler,* 5 Tex.Civ.App. 299, 23 S.W. 1047, 1048–49 (1893, no writ).

---

5. Neither party attached a copy of the index at issue in this case as summary judgment evidence.

Additionally, the Murrays argue that a valid lien was not created because the abstract was indexed "backwards" by identifying the FDIC, the judgment creditor, as "grantor" and Moore, the judgment debtor, as "grantee." They contend that the FDIC should have been indexed under the "grantee" heading and that Moore should have been indexed under the "grantor" heading.

The Murrays argue that reversing the names of the grantor and grantee does not comply with the requirement of section 193.003(b) of the local government code that a cross-index be kept in alphabetical order by the names of grantors and grantees. *See* TEX. LOCAL GOV'T CODE ANN. § 193.003(b) (Vernon 2008). As with section 52.004(b) of the property code, section 193.003(b) also does not require that a county use the headings "grantor" and "grantee." Instead, it states that the cross-index must contain "the names of the grantors and grantees in alphabetical order." [6] *See id.*

They also cite *Reynolds v. Kessler*, 669 S.W.2d 801 (Tex.App.-El Paso 1984, no writ) as support for their position. In that case, the Kesslers sued Reynolds to remove the cloud of Reynolds' federal judgment lien on their property. *Id.* at 803. In the underlying lawsuit, John Hancock Mutual Life Insurance sued Reynolds and Charlie Dennis. Reynolds filed a cross-claim against Dennis and obtained a judgment against him. But Reynolds' abstract of judgment was not indexed showing Reynolds as judgment plaintiff and Dennis as judgment defendant. *Id.* at 805. Instead, the indexing showed only John Hancock as plaintiff and Reynolds and Dennis as defendants. *Id.* Consequently, in dicta, the court held that the abstract of judgment did not create a valid lien. *Id.*

Unlike the indexing in *Kessler*, in this case the Murrays do not dispute that the FDIC and Moore were indexed opposite each other. *See id.* Instead, their complaint is about the heading under which the parties were indexed. As we have noted, the statute does not address headings under which a judgment plaintiff and a judgment defendant must be indexed. Craig testified that Cadle's abstract of judgment was recorded in the alphabetical index; that it showed the name of the plaintiff, the FDIC; and that it showed the name of the defendant, Moore. Cadle's summary judgment evidence shows that the abstract was indexed in accordance with the statute.[7] *See* TEX. PROP.CODE ANN. § 52.004(b). And we cannot conclude that an otherwise valid judgment lien is invalid because the FDIC was listed under the heading "grantor" instead of "grantee" and Moore was listed under the heading "grantee" instead of "grantor."[8]

**6.** It also states that if the deed is made by a sheriff, the index entry must contain the name of the sheriff and the defendant in execution. TEX. LOCAL GOV'T CODE ANN. § 193.003(b). And it addresses other situations in which property is conveyed: if a deed is made by an executor, administrator, or guardian, the index entry must contain the name of that person and the name of the person's testator, intestate, or ward; if the deed is made by an attorney, the index entry must contain the name of the attorney and the attorney's constituents; and if the deed is made by a commissioner or trustee, the index entry must contain the name of the commissioner or trustee and the name of the person whose estate is conveyed. *See id.* Under this statute, names other than the names of the grantors or grantees are included in the alphabetical index.

**7.** It is undisputed that the index entry also showed the volume and page where the instrument could be found.

**8.** Although this issue was not raised in *Wilson v. Dvorak*, we note that in that case the judgment creditor was indexed under "grantor" and the judgment debtor was indexed under

We conclude that the abstract was entered on the alphabetical index to the real property records showing the FDIC as plaintiff in the judgment and Moore as defendant in the judgment, that it substantially complied with the statutory requirements, and that a reasonable search of the Dallas County real property records would have revealed the judgment lien against Moore. *See Wilson,* 228 S.W.3d at 236. Accordingly, we conclude that the summary judgment evidence showed, as a matter of law, that Cadle's judgment lien is a valid lien.

We resolve this subpart of appellants' first and second issues against them.

### Equitable Subrogation

In a separate subpart of their first and second issues and in their third issue, the Murrays argue that the trial court erred by denying their motion for summary judgment with regard to their claim for equitable subrogation.[9] They contend that they conclusively proved, or at least raised a material fact issue, regarding whether they were entitled to equitable subrogation.

■■■■ Equitable subrogation "is a legal fiction" whereby "an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." *First Nat'l Bank of Houston v. Ackerman,* 70 Tex. 315, 319–20, 8 S.W. 45, 47 (1888). It essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder. *Id.* at 319–20, 8 S.W. at 46–47; *Farm Credit Bank of Tex. v. Ogden,* 886 S.W.2d 305, 310 (Tex.

App.-Houston [1st Dist.] 1994, no writ). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor. *First Nat'l Bank v. O'Dell,* 856 S.W.2d 410, 415 (Tex.1993). It "does not depend on a contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex. 2007). Texas courts are particularly hospitable to the doctrine. *Interfirst Bank Dallas, N.A. v. U.S. Fid. & Guar. Co.,* 774 S.W.2d 391, 397 (Tex.App.-Dallas 1989, writ denied); *LaSalle Bank Nat'l Ass'n v. White,* 217 S.W.3d 573, 580 (Tex. App.–San Antonio 2006), *rev'd in part on other grounds,* 246 S.W.3d 616 (Tex.2007) (per curiam). Texas courts have also given the doctrine "a liberal application ... broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter." *Forney v. Jorrie,* 511 S.W.2d 379, 386 (Tex.Civ.App.-San Antonio 1974, writ ref'd n.r.e.); *see also, e.g., Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.,* 576 S.W.2d 794, 807 (Tex.1978) (op. on reh'g).

■■■■ There are two key elements to equitable subrogation: (1) the person whose debt was paid was primarily liable on the debt, and (2) the claimant paid the debt involuntarily. *See Harrison v. First Nat'l Bank,* 238 S.W. 209, 210 (Tex. Comm'n App.1922, judgm't adopted); *Fears v. Albea,* 69 Tex. 437, 439–40, 6 S.W.

---

"grantee," as in this case. *See Wilson,* 228 S.W.3d at 231.

9. In rendering summary judgment for Cadle, the trial court necessarily rejected the Murrays' claim that they are equitably subrogated to the Countrywide lien.

286, 289 (1887); 68 Tex. Jur. *Subrogation* § 11 (West 2003). A "volunteer" is one "who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own." *O'Dell*, 856 S.W.2d at 415 (quoting *Oury v. Saunders*, 77 Tex. 278, 280, 13 S.W. 1030, 1031 (1890)); *Harrison*, 238 S.W. at 210–11. The burden is on the party claiming equitable subrogation to establish he is entitled to it. *Monk v. Dallas Brake & Clutch Service Co.*, 697 S.W.2d 780, 782 (Tex.App.-Dallas 1985, writ ref'd n.r.e.).

 Additionally, each case turns on its own facts when the issue is one of purely equitable subrogation. *Providence Inst. for Sav. v. Sims*, 441 S.W.2d 516, 519–20 (Tex.1969). The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. *See id.; Ackerman*, 70 Tex. at 319–20, 8 S.W. at 47–48; *Esparza v. Scott & White Health Plan*, 909 S.W.2d 548, 552 (Tex. App.-Austin 1995, writ denied), *abrogated in part on other grounds by Fortis Benefits v. Cantu*, 234 S.W.3d 642 (Tex.2007). Factors a court may consider in conducting this balancing test are the negligence of the party claiming subrogation, whether that party had notice of the intervening lien, and whether the intervening lienholder will be prejudiced if equitable subrogation is allowed. *See Sims*, 441 S.W.2d at 519 (negligence, notice); *Ogden*, 886 S.W.2d at 311 (prejudice). When prejudice is shown, a court should consider the entire circumstances in determining the weight to give the prejudice. *Fleetwood*, 786 S.W.2d at 555 n. 2 (Tex.App.-Austin 1990, writ denied). A trial court should consider whether the subrogation results in additional debt having priority over the intervening interest, whether it results in a material change in the terms of the superior interest, the foreseeability of the potential prejudice, and whether the party claiming prejudice could have avoided the prejudicial effect. *Id.* (foreseeability, avoidance); *Med Ctr. Bank v. Fleetwood*, 854 S.W.2d 278, 286 (Tex.App.-Austin 1993, writ denied) (additional debt, material change). A junior lienholder does not suffer prejudice merely because it is not elevated in priority. *See Sanger Bros. v. Ely & Walker Dry Goods Co.*, 207 S.W. 348, 350 (Tex.Civ.App.-Fort Worth 1918, writ ref'd).

 When a case is governed solely by equitable principles, a trial court must be cautious in resolving these issues by summary judgment. *Fleetwood*, 786 S.W.2d at 557. Because a trial court has discretion in deciding cases involving equitable relief, the court should not exercise that discretion unless the evidence has been fully developed. *Id.* We will not disturb a trial court's ruling balancing the equities unless it is shown that it would be inequitable not to do so. *Osborne v. Jauregui, Inc.*, No. 03–04–00813–CV, 2008 WL 1753553 at *3 (Tex.App.-Austin Apr. 17, 2008, no pet. h.) (en banc) (op. on reh'g) (citing *Esparza*, 909 S.W.2d at 552); *see Tex. Ass'n of School Boards, Inc. v. Ward*, 18 S.W.3d 256, 261 (Tex.App.-Waco 2000, pet. denied). However, a trial court abuses its discretion if it grants or denies equitable relief when material fact issues are in dispute. *See First Nat'l Bank of Seminole v. Hooper*, 48 S.W.3d 802, 809 (Tex.App.-El Paso 2001), *rev'd on other grounds*, 104 S.W.3d 83 (Tex.2003).

*Unresolved Fact Issues*

 We conclude that the Murrays have met the two key elements to a claim for equitable subrogation. First, the Murrays showed that the person whose debt

was paid, Moore, was primarily liable on the debt. *See Harrison,* 238 S.W. at 210. Next, the Murrays showed that they were not "mere volunteers" because they paid the Countrywide debt using all of the loan proceeds and $77,277.76 of their own money and did so at the request of the debtor, Moore, and the property owner, Brunswick Homes.[10] *See Harrison,* 238 S.W. at 210–11 (any person having subsequent interest in premises who pays off mortgage for which he is not primarily liable becomes equitable assignee of it and may keep mortgage alive and enforce lien for his benefit). But that does not end our inquiry. Because this is a claim for equitable relief, we examine the totality of the circumstances to determine whether the trial court's decision to deny the Murrays' claim for equitable subrogation was arbitrary, unreasonable, and unsupported by guiding rules and principles. *See Sims,* 441 S.W.2d at 519–20.

One of the factors a trial court may consider in balancing the equities is whether the party claiming a right to equitable subrogation had notice of the judgment lien. *See Sims,* 441 S.W.2d at 519 (recognizing that some courts take position that constructive notice of intervening lien is sufficient basis for denying subrogation while others take contrary position). And negligence on the part of the one claiming a right to equitable subrogation is relevant to this inquiry. *See Sims,* 441 S.W.2d at 519 ("Negligence on the part of one seek-

ing subrogation is of some importance when the right is wholly dependent upon equitable principles."). The Murrays at least had constructive notice of the judgment because, as we previously concluded, the judgment lien is valid. *See* TEX. PROP. CODE ANN. § 13.002 (Vernon 2004); *Hoffman,* 74 S.W.3d at 909.

Additionally, Cadle offered evidence of alleged improprieties in the transaction between Brunswick Homes and the Murrays by offering evidence that the Murrays had actual knowledge that they were purchasing the property from Brunswick Homes but were paying off Moore's loan from Countrywide, and did nothing to investigate this discrepancy. Cadle argues that the Murrays blindly turned the transaction over to Baxter, Baxter was the Murrays' agent, he knew about Moore's judgment lien, and his knowledge was imputed to the Murrays.

Conversely, the Murrays argue that Baxter was not their agent and his knowledge is not imputed to them as a matter of law. They cite *Tamburine v. Center Savings Ass'n,* 583 S.W.2d 942 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.) to support their argument. In that case, the court explained the difference between a party hiring an abstract company to investigate title and a party hiring a title company to issue a title insurance policy. *See id.* at 946–50. Here, however, the evidence is conflicting about the nature of the relation-

---

**10.** Cadle initially contends that a property owner cannot be equitably subrogated to a lien on his own property. But Cadle does not cite any authority to support this proposition. Next, Cadle contends that the Murrays did not offer evidence that they paid the debt at the instance of the owner of the property or the holder of the encumbrance. We disagree. Although the Murrays thought Moore owned the property and they were purchasing it from him, the settlement statement showed that Brunswick Homes owned the property and showed a "reduction in amount due the seller" of $496,927.76 as "payoff first mortgage Countrywide Home Loans." The statement was signed by James Moore as Manager of Brunswick Homes. We conclude this sufficiently evidences a request by both Moore, the debtor, and Brunswick Homes, the property owner, to pay off the Countrywide debt. *See Leonard v. Brazosport Bank of Tex.,* 628 S.W.2d 216, 219 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.).

ship between Baxter and the Murrays. For example, Baxter testified that as an escrow agent for LandAmerica, he served only as the Murrays' closing agent. But Whitney Murray testified that she hired LandAmerica to investigate the title and relied on LandAmerica to tell her if there was anything wrong with the title. And Michael Murray testified that he was a customer buying a product from LandAmerica, he looked to Baxter to make sure the documents were prepared properly, he expected LandAmerica to make sure there were no problems with the title to the property, and he would have wanted to know that Baxter and Moore had conversations back in October 2003 about the judgment lien against Moore.

The Murrays also point out that if they are subrogated to the Countrywide lien, Cadle's judgment lien would still be the junior lien and that Cadle would be in no worse position than it occupied when Countrywide held the first lien. *See id.; Ricketts v. Alliance Life Ins. Co.,* 135 S.W.2d 725, 735 (Tex.Civ.App.-Amarillo 1939, writ dism'd judgm't cor.) (op. on reh'g). In fact, Cadle concedes that its judgment lien was junior to the $500,000 Countrywide lien before Brunswick Homes sold the property to the Murrays. Although Cadle argues that it would be "severely prejudiced" if the Murrays are subrogated to the Countrywide lien, it did not offer any evidence to show how it would be prejudiced. *See Med Ctr. Bank,* 854 S.W.2d at 285–86. Cadle also contends that, even if the Murrays are subrogated to the Countrywide lien, their lien cannot be given priority over its judgment lien because the Murrays did not file their lien in accordance with the property code. *See* TEX. PROP.CODE ANN. § 13.001 (Vernon 2004). But Cadle has not cited, and we have not found, any cases holding that a lien arising by operation of law under equitable principles is subject to the recording statutes. *See Park Cent. Bank of Dallas v. JHJ Invs. Co. of Little Elm,* 835 S.W.2d 813, 814–15 (Tex.App.-Fort Worth 1992, no writ) (section 13.001 applies only to instruments in writing and not to equitable rights in realty).

We conclude that what the parties knew and intended are all relevant factors in balancing the equities involved in this case. *See Sims,* 441 S.W.2d at 519. We further conclude that the evidence creates a fact issue about whether Baxter was the Murrays' agent such that his knowledge should be imputed to them. Issues of knowledge and intent are rarely appropriate for summary judgment. *Fleetwood,* 786 S.W.2d at 556.

The trial court's judgment does not state the basis of its ruling. But after reviewing the summary judgment evidence, we cannot conclude that the equities weigh in favor of Cadle and against the Murrays' claim for equitable subrogation as a matter of law. And these same fact issues preclude us from rendering summary judgment for the Murrays on that claim. Instead, we conclude that material fact issues remain in deciding this claim for equitable relief. As a result, the trial court abused its discretion when it entered judgment concluding that there was "no genuine issue of material fact and that [Cadle] is entitled to judgment as a matter of law."

We sustain appellants' first, second, and third issues as they relate to whether the Murrays are equitably subrogated to the superior Countrywide lien, and remand this issue to the trial court for further proceedings.

## ADMISSION OF EXPERT TESTIMONY

In their fourth issue, the Murrays argue that the trial court erred by admitting Cadle's expert affidavit two months after

the hearing on the summary judgment motions without giving them an opportunity to present evidence in rebuttal. Cadle offered the affidavit of a title examiner to support its contention that the judgment lien would have been discovered through a proper search of the Dallas County property records. However, we did not consider this expert's affidavit in reaching our decision about whether the judgment lien was valid and whether the trial court erred by granting Cadle's summary judgment motion on this ground. Because of our disposition of the case, we do not need to address this issue.

### CONCLUSION

We affirm that part of the trial court's judgment declaring that The Cadle Company's judgment lien is a valid lien against the property. We reverse that part of the trial court's judgment declaring that The Cadle Company's judgment lien is a superior judgment lien against the property and ordering foreclosure of that lien and remand to the trial court for further proceedings.