**Opinion filed April 1, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00117-CV

_____

## OWEN FUQUA AND NORMA FUQUA, Appellant

## V.

## ONCOR ELECTRIC DELIVERY COMPANY, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV0705172**

### O P I N I O N

This is an appeal from a final judgment enjoining Owen Fuqua and Norma Fuqua from using an airstrip on their property because the airstrip crossed an easement owned by Oncor Electric Delivery Company. Owen, an experienced pilot, sometimes flew his small planes under Oncor's high voltage power line when landing on his airstrip, which was perpendicular to the power line with one end extending under the power line and across the easement. The trial court entered a partial summary judgment, finding as a matter of law that Oncor had an easement across the Fuquas' land, and a jury trial was conducted to determine if the airstrip violated that easement. The jury found that the airstrip constituted an "obstruction" to Oncor's easement.

The trial court subsequently entered a final judgment enjoining the Fuquas' use of the airstrip and awarding attorney's fees to Oncor. The Fuquas appeal. We affirm in part, vacate and remand in part, and reverse and render in part.

Norma Fuqua presents eight issues on appeal, and Owen Fuqua presents the same eight issues but also adds a ninth issue in his brief. In the first issue, the Fuquas contend that their land is not burdened by an easement to Oncor or its predecessors and that the alleged easement fails to describe the Fuquas' land.

The trial court concluded as a matter of law that the Fuquas property was burdened by an express easement recorded in the Brown County deed records in volume 505, page 569. The document, which was recorded on May 15, 1963, reflects that an easement and right-of-way was granted to Oncor's predecessor, Texas Power & Light Company (TP&L), by a previous record owner of the Fuquas' land: Eula Byrd, individually and as independent executrix of the estate of W. S. Byrd. The easement was obtained for the Dublin to Brownwood transmission line and purports to cover "Tract No. 38-91." Byrd, who also owned the tracts on both sides of the tract that the Fuquas now own, conveyed the following:

> [A]n easement and right of way for an electric transmission and distribution line, consisting of variable numbers of wires, and all necessary or desirable appurtenances, and for a telephone line and appurtenances, over, across and upon Grantor's land in the R. M. Ferguson Survey, Abstract No. 315, and Brown County School Land Survey, Abstract No. 41, Brown County, Texas, more particularly described in [three specific deeds].

The location of the easement was described as beginning at a specific point in the east boundary line of the property and then continuing in a southwesterly direction for 9,905 feet to a specific ending point in the east boundary line of a county road.

The Fuquas' contention is that their tract, though included within the R. M. Ferguson Survey, Abstract No. 315, and the Brown County School Land Survey, Abstract No. 41, was not included within any of the three specific deeds provided for in the written easement but, rather, was located between the tracts specified in those deeds. They assert that the description is insufficient to meet the requirements of the Statute of Frauds. TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 2009).

An express easement is an interest in land that is subject to the Statute of Frauds. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). "To be sufficient, the writing must furnish within

2

itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972). Whether an agreement falls within the Statute of Frauds is a question of law. *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.). If an easement, though uncertain, is susceptible to a reasonable construction as to its true intent and meaning, the easement satisfies the Statute of Frauds. *Id.* When construing a conveyance, the court does not look at terms in isolation; rather, it must give effect to all parts of the conveyance and construe the document as a whole. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995). Even if different parts of a deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts and construe the deed to give effect to all of its provisions. *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991).

The court in *Compton v. Texas Southeastern Gas Co.*, 315 S.W.2d 345 (Tex. Civ. App.—Houston [1st Dist.] 1958, writ ref'd n.r.e.), was faced with facts similar to the case before this court. In *Compton*, a pipeline easement, which was obtained through condemnation proceedings, specifically included by reference to prior deeds two of three tracts owned by the landowner; however, it omitted the middle tract. 315 S.W.2d at 347-48. The court determined that the metes and bounds description of the right-of-way was sufficient and that the omitted tract was included in the general description clause. *Id.* at 349. The right-of-way was described as being "all that certain tract or parcel of land lying and being situated in Waller County, Texas, being part of the Justo Liendo 5 Leagues Grant, being part of [the two tracts specified by deeds]." *Id.* The *Compton* court rejected the landowner's contention that the reference to the Justo Liendo 5 Leagues Grant should be ignored and full effect should be given to the description of the two specific tracts.

Likewise, because we must attempt to harmonize and give effect to all parts of the document granting the easement, we reject the Fuquas' contention that we should ignore the general conveyance language and the description of the easement as beginning at a certain point and continuing for 9,905 feet to a certain ending point. The record established that the beginning and ending points described in the conveyance from Byrd to TP&L could be identified with reasonable certainty and that the distance between these two points was 9,905 feet. The record also established that this easement crossed the Fuquas' property. We hold that the Statute of

3

Frauds was satisfied and that the trial court properly determined as a matter of law that an express easement existed across the Fuquas' land. The first issue is overruled.

In the second issue, the Fuquas contend that the injunction should be overturned because the easement is not in their chain of title and because they were not parties to the instrument, had no notice of the terms of the easement, and were good faith purchasers. The undisputed evidence shows that the above-ground, high voltage power line was erected in the early 1960s and was open and obvious; that the Fuquas' predecessor in title conveyed an easement to Oncor's predecessor in 1963; that, pursuant to a title opinion rendered at the time of the Fuquas' purchase, the Fuquas were notified of the existence and location in the county's records of the easement to TP&L; and that the 1985 deed to the Fuquas provides that the sale was specifically "made and accepted subject to . . . [e]xisting easements for utility and water lines." The second issue is overruled.

In the third issue, the Fuquas assert that the terms of the injunction are overbroad and unreasonable in scope, limiting the Fuquas' use of their property beyond the boundaries of the easement. The trial court enjoined the Fuquas from utilizing, allowing others to utilize, and continuing to maintain "the Airstrip on or near the Easement on the Property, which necessarily includes the superjacent airspace extending horizontally for 200 feet beyond each end of the Airstrip and then outward and upward for 5,000 feet at a slope of 20 to 1." Among the rights granted in the easement to TP&L were the following:

> [T]he right to trim or cut down trees or shrubbery to the extent, in the sole judgment of the Company, necessary to prevent possible interference with the operation of said line or to remove possible hazard thereto, and the right to remove, or prevent the construction of, for a distance of 50 feet on each side of the actual center of said line, any or all buildings, structures or other obstructions which, in the sole judgment of the Company, may endanger or interfere with the efficiency, safety, or convenient operation of said line and its appurtenances. . . .

> The right is reserved by Grantor to use the land within the 100 foot space above described for general agricultural and grazing purposes, provided such use shall not include the growing of trees thereon or any other use which might, in the sole judgment of the Company, interfere with the exercise by the Company of the rights hereby granted.

A trial court generally possesses great discretion in issuing an injunction. However, a trial court abuses its discretion by entering an injunction that is so broad as to either grant a plaintiff more relief than it is entitled to or enjoin a defendant from conducting lawful activities

4

and exercising legal rights. *Villalobos v. Holguin*, 208 S.W.2d 871, 875 (Tex. 1948); *Fairfield Estates L.P. v. Griffin*, 986 S.W.2d 719, 723 (Tex. App.—Eastland 1999, no pet.); *see also Holubec v. Brandenberger*, 111 S.W.3d 32, 39-40 (Tex. 2003) ("injunctions must be narrowly drawn and precise").

Oncor introduced testimony supporting its contention that the airstrip interfered with the exercise of Oncor's rights as granted in the easement. One of the hazards associated with high voltage power lines is that the electricity jumps and can electrocute someone even though he is not touching the line. The power line crossing the Fuquas' land is a 138,000-volt line. The lowest wire is 25-29 feet above the runway, and the small, shield wire is about 50 feet above the runway. The placement of the runway underneath the power line impeded the obstacle-free zone as determined by Oncor engineers using FAA guidelines. An Oncor engineer and line design manager detailed various safety risks involving the runway and testified that the runway constituted an obstruction to the safe and efficient use of the power line.

An experienced pilot and instructor who was familiar with the design and construction of airstrips near power plants and power lines testified that the Fuquas' runway constituted an obstacle to the operation of the power line and was not safe. The FAA determined that the Fuquas' airstrip was "objectionable" but that the FAA could not prevent the Fuquas from using the airstrip because the Fuquas designated the airport as a private-use airport. The FAA further advised, "The power line over the runway is a hazard and needs to be removed. Once removed or buried, we will remove the objectionable determination."

The Fuquas presented evidence showing that their airport was not for public use and, therefore, that they need not comply with FAA regulations. They also presented evidence that their airstrip was used only by them, that flying under the power line is easier and safer than flying over it due to visibility issues, and that crop dusters regularly fly under power lines. Substantial evidence regarding Owen's impeccable credentials as a pilot was introduced and was not controverted. The only time Owen flies underneath the power line is when landing from the north. He does not fly underneath the power line when taking off in either direction or when landing from the south. Owen testified that there are no regulations prohibiting taxiing, taking off, or landing underneath a power line. He also testified that, where the runway was located, there had been a road since at least 1981.

Though we are concerned about the safety issues involved in landing an airplane near a high voltage power line, we are constrained to address the issues presented in this case. We agree with the Fuquas that the terms of the injunction are overbroad. The trial court enjoined the Fuquas from using the airstrip on "or near" the easement. The trial court also imposed FAA regulations on the airstrip and the superjacent airspace even though the evidence showed that the Fuquas' private-use airstrip was not subject to those FAA regulations.[1] Oncor does not contend, nor does the record indicate, that the Fuquas were in violation of any applicable ordinance, statute,[2] or FAA regulation. The Fuquas own the land, and Oncor has a 100-foot easement for its power lines. Pursuant to that easement, Oncor may remove any obstruction within the 100-foot easement. The terms of the easement do not prohibit the Fuquas from utilizing their land or the airspace outside the easement; however, the injunction does. The injunction goes so far as to extend the easement "horizontally for 200 feet beyond" the opposite end of the airstrip, which is approximately 2,000 feet from the power line, and "then outward and upward for 5,000 feet at a slope of 20 to 1." We hold that the trial court abused its discretion by including the overly broad language "or near" in the injunction and by imposing inapplicable FAA guidelines to effectively extend the boundaries of the easement. The third issue is sustained.

In the fourth issue, the Fuquas challenge the factual sufficiency of the evidence in support of the jury's finding that the airstrip constituted "an obstruction as that term is used in the easement." To address this issue, we must consider and weigh all of the evidence and determine whether the evidence in support of the finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). In addressing this issue, we must keep in mind that the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The record shows that the evidence on this issue was controverted. Oncor offered testimony that the airstrip itself constituted an obstruction. Oncor's transmission engineering

---

[1]*See* 14 C.F.R. §§ 77.21(c), 77.23, 77.25.

[2]The parties note that TEX. HEALTH & SAFETY CODE ANN. §§ 752.004-.005 (Vernon 2003) restrict activities within six feet of a high voltage overhead line. Nothing in the record suggests that the Fuquas ever came within six feet of the power line.

line design manager testified that the asphalt airstrip itself was objectionable because Oncor's trucks, while driving on the easement, would have to cross the airstrip and would damage the asphalt runway thereby creating a safety hazard. Oncor also offered testimony that the airstrip as defined in the jury charge, meaning the runway and its usage, constituted an obstruction to the operation of the power line. The Fuquas offered testimony indicating that the airstrip did not constitute a building, structure, or obstruction and did not interfere with the power lines. As the judge of the credibility of the witnesses, the jury was free to believe the testimony that the airstrip constituted an obstruction. After reviewing all of the evidence, we cannot hold that the evidence is insufficient to support the finding or that the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. The fourth issue is overruled.

In the fifth issue, the Fuquas assert that the trial court erred in charging the jury that the term "airstrip" as used in the jury charge includes both the runway "and its usage." We must review an allegation of jury charge error for an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). In its petition, Oncor sought to enjoin, among other things, the use of the airstrip. Although the terms of the easement in this case did not specifically limit the landowner's "usage" of the property, it has been held pursuant to common law that a landowner has no right to "use" his property in such a way as to interfere with an easement holder's reasonable use and enjoyment of the easement. *Still v. Eastman Chem. Co.*, 170 S.W.3d 851, 854-55 (Tex. App.—Texarkana 2005, no pet.). We cannot hold that the trial court acted arbitrarily without reference to any guiding rules or principles when it charged the jury consistent with the petition and common law. The fifth issue is overruled.

In the sixth issue, the Fuquas complain that the trial court erred in refusing to instruct the jury on the issue of the Fuquas' lack of notice of the terms of the easement. In the seventh issue, the Fuquas argue that the trial court erred in refusing to admit evidence regarding their lack of notice of the terms of the easement. The Fuquas assert that they were good faith, or bona fide, purchasers because they did not have notice of the terms of the easement.

To be a bona fide purchase, the purchase must have been made for valuable consideration and without notice, either actual or constructive, of the adverse claim. *Cleaver v. Cundiff*, 203

7

S.W.3d 373, 378 (Tex. App.—Eastland 2006, no pet.) (citing *F.J. Harrison & Co. v. Boring & Kennard*, 44 Tex. 255, 263 (1875)). Notice is sufficient if it would lead an ordinarily prudent man to inquire into the matter. *Id.* Owen testified that he knew the power lines were there at the time he purchased the property in the mid-1980s. The evidence established that the power line was open and obvious, that the Fuquas were aware of the high voltage power line and poles crossing the property when they purchased it, and that the deed to the Fuquas was expressly made subject to existing utility easements. The Fuquas' alleged lack of notice of the specific terms of the easement does not alter the fact that they had notice of the existence of the easement and, therefore, could not be bona fide purchasers. The trial court did not err in refusing to admit evidence or instruct the jury on the issue of the Fuquas' notice of the specific terms of the easement. The sixth and seventh issues are overruled.

In the eighth issue, the Fuquas assert that Oncor waived the right to attorney's fees by failing to submit them to the jury for determination. The record shows that Oncor requested and the trial court awarded attorney's fees incurred from the inception of the suit until the date of the order granting Oncor's motion for partial summary judgment. After conducting a post-verdict hearing on the contested issue of attorney's fees that had been incurred prior to the summary judgment order, the trial court in its final judgment awarded reasonable and necessary attorney's fees for that time period in the amount of $59,755.75 pursuant to TEX. CIV. PRAC. & REM. CODE ANN. ch. 37 (Vernon 2008). Section 37.009 provides that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just" in a declaratory judgment proceeding. Pursuant to Section 37.009, the judge is to determine whether an award of attorney's fees is equitable and just; however, even when declaratory relief has been determined by summary judgment, the issue of whether attorney's fees are reasonable and necessary is a question of fact for the jury to determine when the jury is the trier of fact. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000); *Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998).

The record in this case shows not only that Oncor failed to request that the issue be submitted to the jury but also that Oncor affirmatively requested that the judge, rather than the jury, determine the issue of the reasonableness and necessity of attorney's fees. The Fuquas objected, correctly asserting that the reasonableness and necessity of attorney's fees was an issue of fact for the jury. In accordance with Oncor's request, the issue was not submitted to the jury.

Under these circumstances, we agree with the Fuquas that Oncor has waived its claim to the recovery of attorney's fees. *See* TEX. R. CIV. P. 279 (which provides that, upon appeal, all independent grounds of recovery "not conclusively established under the evidence and no element of which is submitted or requested are waived"); *University of Tex. at Austin v. Ables*, 914 S.W.2d 712, 717 (Tex. App.—Austin 1996, no writ). The Fuquas' eighth issue is sustained.

In the ninth issue, Owen complains of error in the denial of his motion to recuse or disqualify Judge Stephen Ellis. *See* TEX. R. CIV. P. 18b. We must review the denial for an abuse of discretion. TEX. R. CIV. P. 18a(f). The record shows that William Bell had written the title opinion that was issued when the Fuquas purchased the property in 1985. When this fact came to light during a hearing on the temporary injunction, Judge Ellis stopped the proceeding and notified all parties that he had been Bell's law partner but that he had not been involved in the matter and that he had no knowledge of it. At that time, Judge Ellis offered to "recuse" himself from serving in this case. Judge Ellis asked in open court if there was an issue with him serving as the judge in this case. Owen, who was representing himself pro se and was on the witness stand at the time, did not voice any objection. The attorneys for Oncor and Norma affirmatively stated that they had no objection. However, two months later – after Judge Ellis had issued a temporary injunction against the Fuquas – Owen filed a motion for disqualification and, alternatively, recusal of Judge Ellis.

The matter was assigned to and heard by Judge John G. Hyde. Judge Hyde conducted a hearing and denied Owen's motion. Owen contends that Judge Ellis was disqualified pursuant to Rule 18b(1). He does not contend that Judge Ellis was constitutionally disqualified pursuant to TEX. CONST. art. V, § 11. Rule 18b(1) provides in part that judges shall disqualify themselves in all proceedings in which "(a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter; or (b) they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy." The record does not support the contention that either Bell or Judge Ellis had any direct interest in the subject matter of this suit. Furthermore, according to the record from the hearing, Bell did not serve as counsel to a party to this suit but, rather, represented the bank that conveyed the property to the Fuquas. *See In re O'Connor*, 92 S.W.3d 446, 448-49 (Tex. 2002). Nor, is the matter in controversy in this case the same as that at issue in 1985. *See id.*

9

Owen contends that Judge Ellis should have recused himself pursuant to Rule 18b(2) because Bell was a material witness concerning the proceeding and because Judge Ellis had an interest in the proceeding due to a possible allegation of malpractice on the part of Bell. The record does not show that Bell was a material witness, that Bell committed malpractice, or that Judge Ellis had any interest in the subject matter of the proceedings at issue in this case. We find no abuse of discretion in the denial of Owen's motion for disqualification or recusal. The ninth issue is overruled.

The judgment of the trial court is vacated insofar as it permanently enjoined the Fuquas from maintaining, utilizing, and allowing others to utilize the airstrip "near the Easement on the Property, which necessarily includes the superjacent airspace extending horizontally for 200 feet beyond each end of the Airstrip and then outward and upward for 5,000 feet at a slope of 20 to 1," and the cause is remanded to the trial court for the entry of a permanent injunction in accord with this court's opinion. The judgment of the trial court is reversed with respect to the award of attorney's fees to Oncor, and we render judgment that Oncor take nothing on its claim for attorney's fees. In all other things, the judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 1, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.