Opinion filed November 14, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00278-CV

_____

## SELECT INVESTMENTS, L.L.C., Appellant

## V.

## RIGOBERTO LOZANO; HUGO ADAME; AND LOZANO, ADAME & GARZA, LLC, Appellees

**On Appeal from the 98th District Court**

**Travis County, Texas**

**Trial Court Cause No. D-1-GN-09-001649**

## M E M O R A N D U M   O P I N I O N

On original submission, we held that the evidence was insufficient to support the damages awarded by the jury for fraud. Appellees filed a motion for rehearing in which they assert that this court erred in rendering judgment against them rather than remanding under the edict of *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998). We grant

the motion for rehearing, withdraw our opinion and judgment dated August 1, 2013, and substitute the following.

Select Investments, L.L.C. appeals from a judgment, following a jury trial, in favor of Lozano, Adame & Garza, LLC (LAG) and Hugo Adame, based on fraud, in the amount of $170,000 and prejudgment interest of $18,676.71, as well as exemplary damages, based on fraud, awarded to Hugo Adame in the amount of $125,000 and to LAG in the amount of $285,884. The trial court did not award Select damages or any offset based upon its counterclaim for breach of contract. Select urges in four issues on appeal that (1) the evidence is legally and factually insufficient to show fraud; (2) the evidence is legally and factually insufficient to show out-of-pocket loss in the amount of $170,000; (3) the trial court erred by not either awarding Select its contract damages or giving it an offset for those damages; and (4) the exemplary damages awarded are legally improper, are not supported by legally or factually sufficient evidence, and are excessive under both state and federal law. We reverse and remand.

Select contends in Issue One that the evidence is legally and factually insufficient to show fraud. The evidence is legally insufficient only if (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). We must examine the record for probative evidence that supports the jury's finding, while giving credit to all favorable evidence that reasonable jurors could believe and ignoring all evidence to the contrary unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

In determining whether the evidence is factually insufficient, we must consider and weigh all of the evidence and determine whether the evidence in support of the finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 558 (Tex. App.—Eastland 2010, pet. denied).

Fraud is a material misrepresentation, which was false, which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Formosa*, 960 S.W.2d at 47. A false representation of future performance is actionable if the promise was made with no intention of performing. *Id.* at 48. Slight circumstantial evidence of fraud, when coupled with a promise to perform, is sufficient to support a finding of fraudulent intent. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 225 (Tex. 1992).

LAG was developing residential real estate in Austin in 2008. Based upon a referral from David Hamlin, a real estate agent, LAG sought funding from Select. Hamlin had previously worked on projects involving Select. Three promissory notes and deeds of trust were executed in connection with the funding of the project. Two of the notes and deeds of trust, in the amounts of $330,000 and $340,000 respectively, were signed by Adame and Rigoberto Lozano on behalf of LAG and by Adame and Lozano individually. These notes were secured by the property being developed by LAG. A third note, in the amount of $125,000, was signed by Adame alone. This third note was secured by property in Brownsville owned by Adame. The three notes totaled $795,000.

Lozano testified that Appellees were waiting for the Brownsville property to sell in order to start the Austin project, but Spencer Lindahl, Select's consultant

contractor, suggested he would lend them the money represented by the note secured by the Brownsville property rather than wait for the property to sell.

The jury found, in its answer to Question No. 8 of the court's charge, that Select committed fraud against the borrowers in connection with the execution of the loan documents. A jury could reasonably have believed, based upon the evidence presented, that Select, through Lindahl, promised that it would lend funds based upon the promissory note secured by the Brownsville property but that it never intended to do so.

Select suggests in its brief that no misrepresentation was made by Select. However, we have set forth testimony regarding a misrepresentation made by Select that it would loan Appellees the funds represented by the note secured by the Brownsville property, while it never intended to do so. Lindahl acknowledged that Select never intended to loan money on the note secured by the Brownsville property, insisting that the note represented additional collateral for the other two notes. While Select states that there is no testimony or documentary evidence that details any misrepresentations, the misrepresentation presented through Lindahl's testimony is one which the jury could reasonably have determined as having been made by Select.

Select argues that Adame never testified as to what representations were made to him before he signed the Brownsville note. We fail to see the significance of this point in that, while the individual note was signed by Adame, the deal as a whole was between LAG, Adame, and Select.

Select contends that the evidence is insufficient to show its intent not to perform as represented, noting that, when the terms or existence of a contract are in doubt, it is wrong to infer fraudulent intent from a party's different view of what the contract obligates them to do—or even from its denial that an oral agreement

4

was ever made.  Select relies on the case of *Miga v. Jensen*, 96 S.W.3d 207, 210 (Tex. 2002), in which the Texas Supreme Court agreed with the appellant in that case that "a dispute over the terms of an oral agreement cannot, by itself, be any evidence of fraud, thereby transforming a contractual disagreement into the tort of fraud."  Given the facts as related, the jury could reasonably have found that Select did not have a different view of what the contract obligated it to do, inasmuch as the documents were in the form of a note, a written agreement.  We also note that a denial that a promise was made is a factor showing a lack of any intent to perform the promise.  *T.O. Stanley Boot Co.*, 847 S.W.2d at 225.

Select asserts that neither Adame nor Lozano testified that, but for a representation supposedly made about the Brownsville note to Adame, LAG would not have signed the other two notes to move forward with its work on the Austin property.  We believe that the jury could reasonably have determined, from the testimony we have set forth, that LAG's work went forward when LAG relied on Select's promise to loan it the money that it was later hoping to recover from the sale of the Brownsville property.  Select suggests that Lozano could not have justifiably relied upon Select to loan the money in a manner other than through draw requests.  Select sets forth no basis for showing that Lozano anticipated that Select would loan money in some form other than through draw requests.  We overrule Issue One.

Addressing the final element of fraud, Select suggests that the evidence is insufficient to show that having access to an additional $125,000 would have permitted LAG to complete the project and make upcoming interest payments to avoid default on the loans.  In essence, Select argues that the evidence is insufficient to show that Appellees suffered any injury as a result of any misrepresentation made to them by Select.  Appellees' fraud claim fails in the

absence of any injury caused by a misrepresentation made by Select. Select incorporates this argument into its second issue, in which it insists that the evidence is legally and factually insufficient to support the $170,000 for out-of-pocket loss found by the jury and awarded in the judgment to Adame and LAG. The out-of-pocket measure of damages in fraud cases computes the difference between the value paid and the value received. *Formosa Plastics*, 960 S.W.2d at 49. Appellees contend that this amount represents the value of the $125,000 that they lost when the Brownsville property was foreclosed plus the $45,000 that they spent on construction expenses less $0 for value received.

According to Appellees, the evidence is sufficient to show that the value of the Brownsville property was $125,000. Lindahl, Select's representative, testified that, during negotiations, Select used the figure of $125,000 because that is the figure given to it by Adame and Lozano. Lozano, one of LAG's partners, testified, "We had talked about the sales price [of the Brownsville property], and we all came up with that amount." Lozano also testified, "We had a pending contract" to sell the Brownsville property for about $110,000 at the time that Lindahl suggested that Select loan them the money against the Brownsville property rather than wait for that property to sell. No one testified that $125,000 was the reasonable market value of the property. Adame, the owner of the property, did not testify at trial.

Despite the fact that no one testified that the reasonable market value of the property was $125,000, Appellees assert that the evidence that we have outlined was sufficient to support the jury's finding as to their damages because it constituted evidence as to Adame's opinion as the owner of the property concerning its value. We disagree. Evidence was presented that $125,000 was the amount used in negotiations between the parties and the amount determined by the partners to be the listed sales price, but no one, including Adame, testified that

6

$125,000 was the reasonable market value of the property. We note also that there was evidence of a prior outstanding mortgage lien of approximately $12,000 plus interest against the Brownsville property. We hold that there was an absence of evidence as to the vital fact of the reasonable market value of the Brownsville property or that, at best, the evidence in support of the reasonable market value of the property amounts to no more than a scintilla of evidence. *See Porras v. Craig*, 675 S.W.2d 503, 504–05 (Tex. 1984) (Owner's testimony of value of real property based on something other than reasonable market value does not constitute evidence of market value.).

In discussing evidence supporting the amount of $45,000 for construction expenses, Appellees refer us to testimony by Lozano that LAG had spent the initial $45,000 it had on hand at the beginning of the project for amendment of its plans to provide for garages in the units as demanded by Select and for the initial pouring of the foundation for one of the buildings. Appellees also refer us to evidence from which an inference could be drawn by the jury that Appellees received no value from the $550,882.45 that was funded by Select. According to Lozano, Appellees had "paid all of the bills" relating to the draws that had been funded. Evidence was admitted indicating that the funded draws were spent on the project and that Select refused to fund the amount requested by Appellees for their "supervisor fees" for the project.

Because there is some evidence of damages but no probative evidence to support the entire amount of $170,000 awarded by the jury for out-of-pocket loss suffered by Appellees, we sustain Issue Two and, in accordance with *Formosa*, remand this cause to the trial court for a new trial. *See Formosa*, 960 S.W.2d at 43–44, 51. Consequently, we do not reach Issue Three or Issue Four because neither is necessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

7

We reverse the judgment of the trial court and remand the cause for a new trial.

PER CURIAM

Judge Hill would not grant the motion for rehearing and, therefore, dissents from the opinion of the majority.

November 14, 2013

Panel consists of: Wright, C.J.,
Bailey, J., and Hill, J.[1]

Willson, J., not participating.

---

[1]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.