**Opinion filed February 10, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00046-CV

_____

## JOHN R. HOLLEY AND AILZA M. HOLLEY, Appellants

## V.

## HOLLEY AND TAYLOR, INC.; PAMELA K. HOLLEY, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF MARY MARSHALL HOLLEY, DECEASED; AND MELINDA MCDANIEL, Appellees

### On Appeal from the 35th District Court
### Brown County, Texas
### Trial Court Cause No. CV1407271

### M E M O R A N D U M   O P I N I O N

This is an appeal from a bench trial of a family dispute involving a claim of equitable subrogation. Appellant John R. Holley and Appellee Pamela K. Holley are siblings. Appellee Holley and Taylor, Inc. (HTI) is a corporation controlled by different family members at various times that owned the parcel of real estate where

a family automobile dealership was located. At a time when John was the president of HTI, HTI executed a deed of trust pledging as collateral the real estate owned by HTI to secure a note made by John and his wife, Ailza, (collectively referred to as Appellants) payable to Texas Bank in the amount of $1,215,352.

Pamela subsequently filed a derivative action on behalf of HTI against Appellants and Citizens National Bank, the successor holder of the note. She alleged that Appellants wrongfully caused HTI to pledge its real property as security for Appellants' personal note. On behalf of HTI, Pamela sought a declaratory judgment that the deed of trust executed by HTI was "null, void, and without effect." The derivative action was concluded by a mediated settlement agreement entered on December 15, 2008.

In 2014, HTI paid Appellants' past-due debt under the note when the real property was sold to a third party. Appellants filed the underlying suit against Appellees seeking a declaratory judgment that the 2008 settlement agreement precluded HTI from seeking payment from Appellants for the debt HTI paid on behalf of Appellants. HTI filed a counterclaim seeking to establish a claim for equitable subrogation against Appellants for the sums it paid to retire Appellants' indebtedness under the note and seeking to foreclose on property owned by Appellants.

The trial court awarded HTI a judgment in the amount of $970,648.73 in actual damages, plus prejudgment and postjudgment interest and attorneys' fees. The trial court further entered a declaration that HTI is equitably subrogated to the liens of Citizens National Bank on all properties owned by Appellants.

In three issues on appeal, Appellants contend that (1) the trial court erred in finding that the 2008 Settlement Agreement did not release HTI's claim of equitable subrogation, (2) the trial court erred in finding that HTI had a lien by equitable subrogation because there was insufficient evidence to support a finding that it paid

the debt involuntarily, and (3) the trial court erred in finding that HTI proved all of the elements of equitable subrogation. We affirm.

*Background Facts*

In 2003, John was the president of HTI. At that time, Appellants signed a promissory note for the $1.2 million loan from Texas Bank in their individual capacities. The loan was secured by a deed of trust pledging real property owned by HTI as collateral. John executed the deed of trust in his capacity as president of HTI. John testified that Appellants then loaned the $1.2 million to Holley Chevrolet Company (HCC), the family automobile dealership. At that time, John owned 100% of the stock of HCC. John testified that HCC made all the payments on the note, but Appellants remained primarily liable for the debt. John testified that Appellants had been borrowing money in this manner since 1991 on the advice of their accountants.

In 2008, Pamela, individually and derivatively on behalf of HTI, sued Appellants. The 2008 lawsuit alleged that Appellants "obtained a personal loan by wrongfully and without proper authorization using the [HTI] property… as collateral." In connection with this loan, the lawsuit alleged causes of action for breach of fiduciary duty to HTI, fraud, negligence, and conspiracy. The lawsuit further sought a constructive trust on all of Appellants' real property. As noted previously, the previous lawsuit was resolved by a mediated settlement agreement executed on December 15, 2008.

On February 3, 2014, a representative of Citizens National Bank sent a letter to HTI's attorney. The letter indicated that payments on the note had become past due. However, the bank had agreed to allow the payments to remain in past-due status, pending the contemplated sale of the HTI property. The bank further indicated that, if the sale of the property fell through, the bank would foreclose on the HTI property in order to satisfy the debt.

3

In April 2014, Pamela, as president of HTI, sold the HTI property. In order to convey clear title to the buyers, HTI was required to pay the remaining $970,648.73 owed on the $1.2 million promissory note, which released the bank's lien on the HTI property. HTI sought a judgment against Appellants for $970,648.73 for the debt that it paid on Appellants' behalf. HTI also sought to be equitably subrogated to the bank's lien on other properties owned by Appellants because it paid Appellants' debt. The trial court granted HTI's requested relief. Additionally, the trial court ordered that HTI's equitable lien was to be foreclosed by an order of sale.

*Analysis*

We begin by addressing a matter raised by Appellants after the filing of the briefs in this appeal. Appellants have filed a motion to disqualify the trial judge, the Hon. Stephen Ellis. They assert that Judge Ellis was disqualified because he was a partner with the attorney who originally worked on the loan and encumbrance of property at issue in this case.

Rule 18b(a)(1) of the Texas Rules of Civil Procedure provides that a judge is disqualified if he "has served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter." TEX. R. CIV. P. 18b(a)(1). Further, the Texas constitution provides that "[n]o judge shall sit in any case . . . when the judge shall have been counsel in the case." TEX. CONST. art. V, § 11. A judge is vicariously disqualified under the Texas constitution if his former associate served as counsel to a party concerning the matter in the case. *In re O'Connor*, 92 S.W.3d 446, 449 (Tex. 2002) (orig. proceeding) (per curium). The issue of constitutional disqualification may be raised for the first time on appeal. *In re Gonzalez*, 115 S.W.3d 36, 39 (Tex. App.—San Antonio 2003, no pet.). When the issue is raised for the first time on

4

appeal, we review the question de novo. *McElwee v. McElwee*, 911 S.W.2d 182, 185 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

Appellants contend that Judge Ellis was disqualified because Judge Ellis's former law partner, William Bell, represented HCC and HTI in obtaining the loan at issue in this case. According to Appellants, Judge Ellis and Bell were law partners until 1989. In 1985, Bell represented both HCC and HTI. As part of this representation, Bell assisted John and his father, Wilton Holley, in obtaining "the loan central to this case." This loan continued to be modified and renewed, until it was eventually renewed in Appellants' names in 2003. According to Appellants, this constitutes the "same matter" as the case before us because "[s]ome of the key issues in the trial of this case were the history of the business relationship between Holley Chevrolet and Holley & Taylor, the origin of the loan encumbering Holley & Taylor property, and the life of the loan."

Appellees contend that Judge Ellis is not disqualified because there was no evidence produced at trial that indicates that John and Wilton Holley relied on Bell for advice about the loan structure and because the loan originated in 1991, two years after Judge Ellis left the partnership. Appellees further contend that the transactions with which Bell allegedly assisted are not the "same matter" that was before Judge Ellis in this case.

Both parties rely on *Fuqua v. Oncor Electric Delivery Co.*, 315 S.W.3d 552 (Tex. App.—Eastland 2010, pet. denied). In that case, we also reviewed the professional relationship between Judge Ellis and his former partner, Bell. *Id.* at 560. That case involved the issues of whether or not Fuqua's land was burdened by an easement to Oncor and, if so, whether or not Fuqua violated that easement. *Id.* at 554–55. During trial, Judge Ellis discovered that Bell had written the title opinion that was issued to the Fuquas when they purchased the property in 1985. *Id.* at 560. We concluded that Judge Ellis was not disqualified because "Bell did not serve as

5

counsel to a party" in that suit and that "the matter in controversy . . . [was not] the same as that at issue in 1985." *Id.* Appellants attempt to distinguish *Fuqua* on the grounds that, in this case, Bell represented one of the parties in the lawsuit, HTI, in 1985 and that this representation constitutes the same matter as the present suit: the loan's structure and purpose. We disagree.

Even assuming that John and Wilton Holley relied on advice from Bell in structuring the loan in 1985, we conclude that this representation did not constitute the same matter as that at issue here. Equitable subrogation "allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing." *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). Thus, the primary issue in this case was whether or not HTI was equitably subrogated to the lien previously held by Citizens National Bank.

As will be discussed in greater detail below, in order to prove equitable subrogation, HTI was required to prove that it involuntarily paid a debt for which another was primarily liable and that the balance of equities favor subrogation. *Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex. App.—Dallas 2008, pet. denied). While there was evidence presented at trial regarding the business relationship between HCC and HTI and the origin, structure, and purpose of the loan, this evidence was neither required to prove the elements of equitable subrogation nor did it relate to issues central to this case. The debt at issue in this case was a note executed by Appellants in 2003 that was secured by a deed of trust executed at the same time. Additionally, the parties executed a settlement agreement concerning the deed of trust in 2008, and the claim for equitable subrogation is based upon a payment that HTI made in 2014. Thus, the matters relevant to HTI's claim for equitable subrogation arose many years after Judge Ellis left his association with

Bell. Therefore, we conclude that the original loan structure is not the same matter that is at issue in this case. We deny Appellant's motion to disqualify.

In their first issue, Appellants contend that the trial court erred in finding that the settlement agreement did not release Appellees' claim of equitable subrogation. A release is a contract, and the construction of it is governed by the general rules relating to contracts. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Appellants couch their complaint as an evidentiary challenge to the trial court's construction of the settlement agreement. However, the construction of an unambiguous contract is a question of law that we review de novo. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999).

When we construe releases, we ascertain and give effect to the intention of the parties. *Baty*, 63 S.W.3d at 848. A release must be considered as a whole in order to give effect to the general purpose and true intention of the parties. *Id.* To be effective, a releasing instrument must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Any claim not "clearly within the subject matter of the release" is not discharged. *Id.* However, the parties are not required to anticipate and identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 20 S.W.3d 692, 698 (Tex. 2000). "[A] valid release may encompass unknown claims and damages that develop in the future." *Id.*

The first paragraph of the typewritten portion of the written settlement agreement provided that the parties desired "to comprise and settle all claims and causes of action of any kind whatsoever which the parties have or may have arising out of the transaction or occurrence which is the subject of this litigation." Appellants rely in large part upon this provision to assert that HTI's act of pledging its real property for the $1.2 million promissory note made by Appellants was the

7

transaction that was the subject of the previous lawsuit and the subsequent settlement agreement. Appellants contend that the settlement agreement precludes HTI's claim for equitable subrogation because it is a claim arising from the loan transaction. We disagree with this construction of the settlement agreement.

Under the terms of the settlement agreement, the deed of trust pledging HTI's property for the $1.2 million note remained in effect. In this regard, Citizens National Bank was a party to the 2008 lawsuit and the settlement agreement that concluded it. The settlement agreement did not have any provisions affecting Appellants' indebtedness under the note to the bank or the fact that HTI's property remained pledged to secure it. Another portion of the settlement agreement provided as follows:

> 5.     Except for the agreements set forth herein *and contingent upon the performance of the obligations set forth herein* the parties hereby agree to release, discharge, and forever hold the other harmless from any and all claims, demand, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above case, as of this date, arising from or related to the events and transactions which are the subject matter of this cause.

(Emphasis added). The italicized portion of this provision was handwritten into a typewritten provision of the settlement agreement. It indicates that the releases set out in the agreement were contingent upon the performance of the obligations set out in the agreement. Thus, the settlement agreement specifically recognized ongoing obligations among the parties after its execution.

Appellants' continuing indebtedness to the bank is central to our analysis because equitable subrogation is a legal fiction whereby one party stands in the shoes of a creditor to pursue a claim belonging to that creditor. *Frymire*, 259 S.W.3d at 142; *Murray*, 257 S.W.3d at 299; *Chase Manhattan Mortg. Corp. v. Cook*, 141 S.W.3d 709, 714 (Tex. App.—Eastland 2004, no pet.) ("Subrogation substitutes another person in the place of a creditor so that the person in whose favor it is applied

8

succeeds to the right of the creditor in relation to the debt."). Furthermore, the settlement agreement does not contain any provisions that preclude HTI from acquiring the bank's right to collect from Appellants, which in this case occurred six years after the execution of the settlement agreement. We agree with HTI's contention that its right to seek equitable subrogation does not arise from the pledging of its property for Appellants' debt, a matter that was addressed by the settlement agreement. Instead, HTI's claim of equitable subrogation arises from the subsequent payment of Appellants' debt to the bank. Accordingly, we conclude that the settlement agreement does not preclude HTI from seeking a money judgment for the indebtedness it paid to the bank to extinguish Appellants' indebtedness.

There is an additional matter that we must consider pertaining to the trial court's judgment awarding HTI a lien on other properties owned by Appellants, specifically a tract referred to as the "Toyota property." Appellants assert that, since HTI asserted claims in the previous lawsuit against the Toyota property, the settlement agreement's broad release language released HTI's subrogation claims against Appellants regarding that property. We disagree.

The provisions of the settlement agreement pertaining to the claims asserted by HTI against the Toyota property in the prior lawsuit are not relevant to our analysis. Once again, we focus on the liens possessed by Citizens National Bank after the execution of the settlement agreement because HTI is stepping into the bank's shoes by claiming equitable subrogation. *See Gant v. Stewart*, 347 S.W.2d 1, 4 (Tex. Civ. App.—Waco 1961, writ ref'd n.r.e.) (A subrogation claimant is entitled to enforce "all rights, liens and equities of a prior lien holder."). While the settlement agreement contained a handwritten provision to the effect that "Bob Boatright, President of Citizens National Bank at Brownwood, shall request to the Board of Directors of said Bank that the property owned by Holley & Taylor, Inc. in Brown County, Texas shall secure only the [$]1,200,000 note," there is no

9

evidence that the bank's board approved this request. The settlement agreement does not indicate that the bank affirmatively agreed to release the Toyota property as collateral for the $1.2 million note, but rather that the bank would consider the request to release the Toyota property by presenting the request to the board of directors for consideration. At trial, Boatright testified that the bank maintained that the $1.2 million note was also still secured by the Toyota property because it was "cross-collateralized" with another $800,000 note made by Appellants to the bank for which the Toyota property had been pledged. Accordingly, the settlement agreement did not release the bank's lien on the Toyota property for the $1.2 million note, nor did it preclude HTI from subsequently obtaining the bank's lien. We overrule Appellants' first issue.

In their second and third issues, Appellants contend that the trial court erred in finding that HTI had a lien by virtue of equitable subrogation because there was no evidence or insufficient evidence that HTI paid the debt involuntarily and because Appellees failed to prove all of the elements of equitable subrogation. Appellants' second and third issues are evidentiary challenges that they have briefed together. In support of these issues, Appellants assert that the trial court's letter ruling constituted findings of fact and conclusions of law. We disagree with this contention.

The trial court issued a letter dated December 8, 2014, to the attorneys of record announcing the court's rulings in the case and directing HTI's attorney to prepare a judgment for the trial court to sign. However, the letter did not have any findings other than a statement that the trial court "finds" that HTI "has a lien by virtue of the doctrine of equitable subrogation after balancing the equities and finding that all of the elements for this type of claim have been proven by a preponderance of the evidence." Generally, a trial court's prejudgment letter may

10

not serve as findings of fact and conclusions of law. *See Cherokee Water Co. v. Gregg Cty. Appraisal Dist.*, 801 S.W.2d 872, 877–78 (Tex. 1990).

When no findings of fact or conclusions of law were requested or filed in the trial court, it is implied that the trial court made all the findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Implied findings of fact, like the trial court's findings, may be challenged for legal and factual sufficiency. *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 231 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In determining whether some evidence supports the judgment and the implied findings of fact, "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Worford*, 801 S.W.2d at 109 (quoting *Renfro Drug Co. v. Lewis*, 235 S.W.2d 609, 613 (Tex. 1950)). The trial court's judgment must be affirmed if it can be upheld on any legal basis that has support in the record. *Id.*; *Curtis*, 20 S.W.3d at 231.

The trial court judges the credibility of the witnesses, determines the weight of testimony, and resolves conflicts and inconsistencies in the testimony. *See Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). If the evidence falls "within [the] zone of reasonable disagreement," we will not substitute our judgment for that of the fact finder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether legally sufficient evidence supports the finding under review, we consider evidence favorable to the finding, if a reasonable fact finder could consider it, and disregard evidence contrary to the finding, unless a reasonable fact finder could not disregard it. *Id.* at 827. In a factual sufficiency review, we view all of the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that it is clearly wrong and unjust. *Plas-Tex, Inc. v. U.S.*

*Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). Thus, the doctrine consists of two elements: (1) the person whose debt was paid was primarily liable on the debt and (2) the debt was paid involuntarily. *Murray*, 257 S.W.3d at 299. Additionally, viewing the totality of the circumstances, the balance of equities must favor subrogation. *Frymire*, 259 S.W.3d at 142; *Murray*, 257 S.W.3d at 300.

Appellants first argue that HTI acted voluntarily in paying the debt to Citizens National Bank because it was under no compulsion to sell the property. "Texas courts are 'liberal in their determinations that payments were made involuntarily.'" *Frymire*, 259 S.W.3d at 145 (quoting *Keck*, 20 S.W.3d at 702). It is well settled that a mortgage may be given to secure the debt of a third person. *Wilbanks v. Wilbanks*, 330 S.W.2d 607, 608 (Tex. 1960). "[T]he person who gives a mortgage to secure the note of a third person becomes a surety for the third person, even though the mortgagor may not be a party to the note." 30 TEX. JUR. 3d *Deeds of Trust and Mortgages* § 44 (2016) (citing *Planters' & Mechanics' Nat. Bank v. Robertson*, 86 S.W. 643, 645 (Tex. Civ. App. 1905, no writ)). Thus, HTI became a surety for Appellants on their indebtedness for the $1.2 million note to the bank. "A person with an interest in the property, a surety, or a person who pays the debt at the request of the debtor, is not a mere volunteer and is entitled to subrogation." 1 W. Mike Baggett & Brian Thompson Morris, *Texas Practice Guide: Real Estate Litigation* § 4:210 (2016) (*citing Farm Credit Bank of Texas v. Ogden*, 886 S.W.2d 305, 312 (Tex. App.—Houston [1st Dist.] 1994, no writ)).

Appellants contend that there is no evidence that the bank made a demand that, HTI sell the property or pay the debt. However, a letter from Boatright to HTI's attorney indicated that Appellants' $1.2 million note was in default and that if the closing did not occur on HTI's property as planned in 2014, the bank could post the property for foreclosure "if need be." Boatwright testified at trial that he told HTI that the bank would foreclose if the conveyance did not occur. Appellee Pamela Holley also testified that HTI would not have paid the remaining indebtedness on the $1.2 million note had the bank not required it. A party is not a volunteer if it paid the debt in good faith and under a reasonable belief that the payment is necessary for its protection. *See Keck*, 20 S.W.3d at 702. Accordingly, the trial court's implied finding that HTI did not voluntarily pay Appellants' indebtedness is supported by legally and factually sufficient evidence.

Appellant next contends that the balance of equities clearly disfavors a finding that HTI was equitably subrogated to the bank's lien. "We will not disturb a trial court's ruling balancing the equities unless it is shown that it would be inequitable not to do so." *Murray*, 257 S.W.3d at 300. While not an element of the doctrine, a general purpose of equitable subrogation is to prevent unjust enrichment. *See Frymire*, 259 S.W.3d at 146 (using the doctrine of unjust enrichment in the court's balance of the equities); *see also Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980) ("Subrogation to the creditor's rights is available . . . only when the debtor was enriched unjustly.").

Appellants contend that the loan proceeds were used to benefit HTI and that it, therefore, should not be able to benefit from the loan a second time by being subrogated to the bank's lien. In some respects, Appellants are challenging the element of equitable subrogation requiring that they be primarily liable for the debt. However, under the express terms of the $1.2 million note, Appellants were primarily liable for the debt. Appellants base their contention pertaining to equities

13

on John's trial testimony. He testified that the proceeds of the $1.2 million loan were loaned to HCC and that HCC made all of the payments on the note. However, there is no evidence that HTI benefited from the loan. Furthermore, the trial court was not required to accept John's testimony that varied from the express terms of the $1.2 million note regarding the parties liable for its payment. Accordingly, we will not disturb the trial court's ruling that balanced the equities in this case. Appellants' second and third issues are overruled.

*This Court's Ruling*

We deny Appellants' motion to disqualify Judge Ellis, and we affirm the judgment of the trial court.


JOHN M. BAILEY
JUSTICE


February 10, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14